Good morning, and may it please the Court. Andrew Gould for the Plaintiff's Appellants in this case. The Marines deserve to have their case heard by a jury of their peers. That is so both procedurally and substantively, and in many ways, as this Court is aware, much of this appeal is about procedure and whether this Court can even reach the merits. It can, and on the merits the District Court erred in granting summary judgment. This Court should affirm, in part, reverse, in part, or alternatively, certify novel issues of first impression to the California Supreme Court. In my time, as the Court's aware, there's four issues between the parties' cross appeals. I plan to focus primarily on preemption as well as the political question doctrine. Of course, I'm happy to address any issues as the Court may have them. The District Court erred in holding that Rule 26 preempted the Marines' negligence claims here, and the specific question before the Court is, does Rule 26 preempt claims for negligence based on AMBRA's liability, that is, a utility's actual knowledge? And if we frame the duty in that fashion, is that duty separate or can it be separated from the condition and the maintenance of the gas pipes at Camp Pendleton? In other words, does the AMBRA's duty only arise in the case of pipes that are in poor condition or not properly maintained, or is there some independent duty that the gas company would have had? So if I'm understanding Your Honor's question correctly, certainly it is about the condition of the gas pipelines, but AMBRA speaks more broadly about knowledge of a dangerous condition that makes it dangerous to furnish or, critically here, continue to furnish gas. Does the AMBRA's duty go beyond the, I'm forgetting the term of art, but the point of contact, the point where the gas line's pipe meets the customer's pipe? It does. It does, Your Honor. At least that's my understanding of the case, because in AMBRA's, for example, that case arose where the gas, the explosion actually occurred where it was in a cabin that was past the valve. I think in that case it was actually petrol and it wasn't a utility in question, but it didn't have anything to do with on whose side of the gas it was. It was more about did the utility, or in that case petrol, and did they have actual knowledge of the dangerous condition that gave rise to a duty to act? Did it preexist Tariff Rule 26? Yes, it did. So AMBRA is a case, you know, it's a 75-year-old rule, and that's part of our argument as to why Rule 26 does not specifically preempt it. Rule 26 does not clearly and explicitly express a purpose to get rid of what is a 75-year-old common law rule. It never says explicitly that it's intending to get rid of that specific, that unique type of duty. But what authority do you have that suggests that the rule needs to be that specific? The language of the rule is broad. It talks about any liability, any damages, any claim arising from the conditioned maintenance of the pipe. So why would it need to be more specific and then specifically say, and that obviates the duty under AMBRAS or the duty of knowledge or something or other? Why would it have to say anything more than any? So we've cited, Your Honor, the Waters case that stands for the proposition of if it's a limitation of liability, it must clearly and explicitly express a purpose. And so that's one of the authorities we would rely on. But that's only one part of the inquiry. It's not simply just does it clearly and explicitly like looking just at the text of Rule 26. As we've argued, under cases like Golden Sedan, you have to look to the broader regulatory universe here, which consists of General Order 58A, Rule 11. It consists of California Public Utility Code, Section 451. All of these are focused on public safety, on the health, and making sure that the utilities are acting in a reasonable manner to prevent. I'm sorry. No, go ahead. No, no. Excuse me. To prevent these types of accidents from happening. And so you have to construe Rule 26 not by itself but alongside the regulatory universe. I'm sorry, Your Honor. I didn't mean to interrupt you. No, no, no. You're answering Judge Beatty's question. I just want to ask you here with respect to Rule 26 and the COBOL. COBOL? COBOL, yes, Your Honor. So the last prong, the third prong. Yes. Why, you know, if we were to recognize liability, why wouldn't it be inconsistent with the third prong of COBOL? In other words, the Public Utilities Commission has basically said that, you know, where the customer, which in this instance is the base or the Marine base, the Marines, Cap Pendleton. If we were to recognize liability in this instance where they are the ones required to maintain, as Judge Beatty pointed out, and the condition of the pipes, why doesn't it fail the third prong of the COBOL test? Excuse me. I don't think it fails the third prong for a few reasons. Now, first off, in the question you asked, part of what I heard you saying was that, you know, the rule speaks to it. And, again, we disagree with that. But even if it did speak to it, then you still have, under cases like Pegastaff, you still have to do a careful assessment of would this thwart or hinder the commission's exercise of regulatory authority. Now, my friend on the other side says, and accurately so, that they say that one of the mandates of the commission is to regulate utility rates. I don't dispute that. I dispute whether it's the most important mandate. But I don't dispute that that's one of the purposes. But, and this is critical, if any limitation of liability would automatically, excuse me, if recognizing a claim for liability, if that would automatically mean that it would thwart or interfere with the commission's exercise of regulatory authority, then the third prong would become superfluous. Why would you even have the third prong? Because, in a sense, you're already saying, well, if the rule clearly and explicitly speaks to it, to this, then it's automatically interfering with the commission. What we've said is that's not the case. Again, if you look to the broader regulatory universe, whether that's under prongs two or three, it's not inconsistent to hold, to allow this case to go forward. And the other thing that I would add is that regardless of what SDG&E claims, we're not here seeking injunctive relief. We're not here challenging the adequacy of Rule 26. We're not saying that Rule 26 needs to be invalidated, that it's bad in some way. We're saying that it doesn't apply. But more specifically, we're saying that we're here seeking damages for a past violation. And allowing that one action would not hinder or interfere with the commission's exercise of authority. Again, in our opinion, it actually aids their exercise of authority because under this broader regulatory universe, the focus isn't on mandating or, excuse me, on regulating utility rates. It's on public safety as it relates to this specific— But Rule 26 seems, at least as I understand it, seems to be related to regulating rights and to keeping those rates at a reasonable level for the public that's paying for the gas bill. So, respectfully, I don't read it in the same way as specifically that Rule 26 is specifically about reasonable rates. It does speak, of course, about what the consumer shall do. Right? The first sentence is the consumer shall be responsible for the maintenance and condition of the pipes. And then it talks about the utility and whether it is liable for any damages or injuries. And what we've said is this is not intended. When you apply a careful covalt analysis, it's not specifically intended. So what's the limiting principle? The limiting principle is AMBRS, Your Honor. Because AMBRS is a very specific duty. It's based on actual knowledge. I can't get up here and say, for example, well, SDG&E should have known. So wait a minute. If the limiting principle is AMBRS, which turns on knowledge, then that rule would mean any time that the utility knew or should have known, knew there was a potentially dangerous situation, they have liability. They have to act. They have to shut off the gas or they're going to have liability. And so the broad language about any claim, any damages, any liability in Rule 26 doesn't mean that anymore. It doesn't mean any claim. It means any claim unless you're negligent. Well, what's important is at the beginning you said knew or should have known. And we're not here standing on should have known. AMBRS requires actual knowledge, which is very specific. It's a heightened burden. But here in this case you argue that the defendant knew or should have known based on various factors, a couple of tests that they arguably clearly knew about because they wrote, but then the previous incident from three months earlier where there was an explosion and they say they didn't know about it, you say they did. So there's then this dispute about whether they knew. And I assume your argument would be if they didn't know, they should have known. Well, that's true, except it's true that we would say that they should have known, but our argument in our briefs is that at least there's a genuine issue of material fact as to that they actually did, in fact, know about it. I understand that they deny knowledge about it. We've presented in our brief all the evidence that, in our view, if you construe it in the light most favorable to us, we believe give rise to a genuine. But that presents a pretty difficult standard for you because, in this case, the two reports at issue were written 20-some years before this incident. So you have to argue that based on that knowledge from many, many years earlier, they knew, they must have known, or if you can't prove actual knowledge, you're going to have to use a standard that they should have known just to establish that they were negligent. So that seems to me the problem getting back to Tariff Rule 26 is that means they're exempt, they don't have liability, unless, of course, they were negligent, which means that your exception, I think, swallows the rule. I disagree, and I'd like to answer the question. I know I might be eating into my time for rebuttal, which I don't intend to. But, again, we don't view it as that it's swallowing the exception. We do view it as a limited exception. With respect to the bulldozer incident, I mean, you're right, Your Honor, in what you said about that the reports were from 1995 and 2000. But what we've also alleged specifically, and it's very important, we have alleged that they actually knew about the bulldozer incident and that it's for the jury to decide whether or not they, in fact, actually knew. If they didn't actually know and were just simply relying on they reasonably should have known, then that cannot give rise to Amber's liability. Okay. We'll reserve the remainder of your time. Thank you for your time. Mr. Cohen, good morning. Good morning. Frederick Cohen, appearing for San Diego Gas and Electric, the appellee. One clarification about the Amber's case and knowledge. It's not knowledge. Amber says liability arises not based on any knowledge of any deficiency at all in a customer's equipment or lines. It requires that it have, and it says this specifically, it requires knowledge of the condition of the defect that caused the injury. So the fact that 22 years ago there was a study that showed there were PVC lines were not state-of-the-art, that they could be improved, interesting but not relevant to the liability that arises under Amber's because what would be required to establish Amber's liability is knowledge of the very conditions that caused the injuries here, which is inadequate burying of the line in the location where the injury occurred or knowledge that the lines were inadequately marked. And there is no, and the trial court, district court, excuse me, correctly found that there was no such knowledge. So even under Amber's, this would be a bridge too far to cross to find common law liability. But beyond that, Your Honor, there is a fundamental question about the prohibition established by Tariff Rule 26, which in our view, in unambiguous terms, states that injuries, that liability for injuries caused by the customer's equipment, customer's equipment that they control, which they did here. The Marines controlled this. They installed these lines. They managed them. They maintained them. And the gas company had no access to these lines. Let me ask you this. Pardon me? Let me ask you a question here. Yes. Let me interject. So what if we assume that the gas company had knowledge of the conditions here? Of the specific defects here. Is Rule 26 still preempt? Yes. The common law tort claim that they've alleged? Amber's is a 1957 decision, and the current version of the tariff was adopted in 2010. It is very broad, and it would cover situations that previously were subject to liability under Amber's. I mean, what 26 says is the utility shall not be responsible for the selection, et cetera, of the consumer's equipment, or for any injuries or damages resulting therefrom. That could not have been written in broader terms. And the purpose of that, as the tariff in the Waters case, which limited liability of telephone companies to $50, way below the claim that was at issue in that state case, the purpose of that rule is to put a limit on a utility's liability because the utility is regulated in every aspect of its job. So the reason for that limitation was stated by the court in Waters and repeated in Covalt when the court said, public utility being strictly regulated in all operations shall likewise be regulated and limited as to its liabilities. Under Covalt, there's a three-part test to determine whether common law rules are preempted in the Covalt case. One, is there authority by the PUC to adopt a rule? Two, has it exercised that authority? And three, will liability undermine the exercise that the PUC has made of its authority? Well, here we know that the PUC has authority to regulate rates because Waters said it, the Supreme Court said it, and Waters and Covalt repeated that. We know it exercised that authority because Rule 26 is a very explicit provision establishing immunity from liability when the sole control over the cause of the injury is within the consumer's hands, knowledge or not. Knowledge was dealt with, by the way, in Salazar, which discussed the Ambrose case and explained that the knowledge does not give rise to liability when the nature of the risk is one within the control of the consumer. If I interrupt you for a moment, your colleague suggests that it's not solely within the control of the consumer, that the risk here and the duty is different because the gas that flows through the pipes is necessary for the explosion. It's the instrumentality, if you will. So if the pipes are in poor condition and not properly maintained, if there's no gas going through them, they're not going to explode. So you see where I'm going here, but their argument is that means there's a separate duty placed on the utility to stop that from happening when they know that it could, when they know there's a problem. That's a duty that's separate from the duty to maintain and take care of the condition of the pipes. How do you respond to that? Well, Ambrose and Salazar both do involve the question of whether there's liability for simply providing gas, and they explain the circumstances and limits. But I would just draw an analogy, Your Honour. If Exxon is aware that the gas it is supplying to Boeing jets could result in a crash of a Boeing jet because we know that there are problems with those, does that make Exxon liable for injuries that are that remote from its decision to provide gas? I might also add, Your Honour, that the... Drop that thought. The decision to provide, the remedy, the duty that the plaintiff argues should be imposed on the gas company is that if it is aware of any Achilles' heel and weakness, one would say, in the Pentcam Pendleton's gas system, then it is required, although it's not seeking an injunction, it's imposing liability because the utility did not turn off its gas. Now... Camp Pendleton is a critical national security facility, and it not only trains soldiers, it operates hospitals, it provides gas for civilians who live in the base. Now, if the gas company, back in 2000, were required to turn off the gas until the gas lines were upgraded, you wouldn't have gas on that base for 10 years. We've cited the authority. That's what the Marines predicted it would cost, to rip out all the old lines, the PVC lines, and install new ones. So that's a very drastic remedy. And in fact... So your argument is that that wouldn't have changed the result here because whatever these vehicles weigh, many several tons, it would have crushed a PVC pipe, even if it had been a different pipe? That's what I understood your argument to be, that the problem with the nature of the pipes wasn't what caused this explosion. If I'm understanding, Your Honour, correct. I mean, if all of that had been done, and all the pipes had been upgraded, this accident would still have occurred because there was no causal relationship between the type of pipes that were on the base, under the base, and the fact that a 40-ton amphibious assault vehicle crashed through a pipe that was exposed because of a rainstorm. Well, I'd like to go back for a moment to your hypothetical of providing gasoline to an airline. Yeah. What if the hypothetical is that the utility knows that there are problems within a multifamily structure, an apartment building, and there are leaks or potential leaks because of problems with the gas lines within that building? And do they have any duty then not to supply gasoline to that building? I'm very sorry, Your Honour. I'm having trouble hearing. I'm sorry, do I? I may be too far away. Is this better? You should have been around for a while. That's okay. Am I closer to the microphone? Does that help? That's great. Okay, so I was asking a little different hypothetical than the one you proposed about providing fuel to the airline. Right. What about providing gasoline to a structure that's a multifamily residence, an apartment building, if the utility knows that there are leaks or problems within the system within that building? It could be an explosion and kill hundreds of people. Yeah. Well, that would be a classic Ambrose case, Your Honour. Absent some sort of immunity, there would be knowledge of a risk that in your hypo would directly lead to the injury. That's what happened in Ambrose. So if the defect is in a gas line, utility knows about it, and the mere providing of gas to that multifamily structure results in an injury when the gas is turned on as a result of that leak, then Ambrose says there would be liability. Now, under Rule 26, there'd be immunity for that, but regardless, even if there wasn't, that context is entirely, of course, different from this one. We don't have a leaking gas line that contributed to this injury. We have conditions that the gas company had no control over and no knowledge, if one views the record carefully, there's simply no knowledge of the problems that gave rise to this injury. So under a Rule 26 circumstance, if Rule 26 applied to the multifamily dwelling, if gas had been provided, and this is the Salazar situation, if gas had been provided for 10 years to that building and the gas company, during one of its inspections, determined that there was some danger, in this case the wrong positioning of a gas furnace, determined that there was a risk, Salazar said, nonetheless, there's no liability because the mere decision to provide gas is not what caused the accident. It was a defect in the customer's equipment, and it had been safe to provide, the mere providing of gas was not itself dangerous, no more than providing gas to Camp Pendleton was dangerous. They'd been doing it since the 70s, I believe. And Salazar said, under those circumstances, and I commend the decision to you because it really addresses the very relief that plaintiffs are requesting, it said, imposing a duty on the gas company to cut off the gas to that building, which it had been providing for 10 years, would be too drastic a remedy. That's specifically what Salazar held. So it really depends, Your Honor, on how the hypothetical is framed. If it's framed in terms of, it's dangerous to begin providing gas because there's just an inherent risk turning on the gas, versus you've been providing the gas, it's not been a problem, there had never been an accident at Camp Pendleton, according to this record, as a result of a gas explosion or anything of that nature. And the accident is the result of some maintenance problem within the control of the consumer, as it was in Salazar. Then the court, interpreting Ambrose, says the answer to your question would be no, there's no liability. And that's leaving aside any immunity that might or might not exist at that time in connection with that gas provider. Let me ask just a pure procedural question. The district court reached the preemption argument on summary judgment, if I'm not mistaken. Yes. Is that correct? Now, your opposing counsel argues that there's a tribal issue of fact with respect to knowledge. Yes, there is. My question to you at the beginning was, even if we assume knowledge, do you prevail? Yes, because Rule 26 is clear. It's clear and unambiguous. So you filed a 12B1 motion as well, is that correct? Yes. Just based on the allegations and the complaints? Based on the indispensable party, yes. But did you also raise the preemption argument on 12B1? No. Why not? Oh, the preemption argument? Yes. I thought you did. Because it's jurisdictional. Which one is jurisdictional? The one we're talking about. The political question? No, the other one. Oh, the indispensable party? No. Preemption. Preemption. Whether the PUC preempts. Oh, I see. I think the court has jurisdiction over the case, even if there's preemption, just as the court had jurisdiction in Waters. Never mind. That's okay. I'm sorry, I'm trying to... That's okay. The civil procedure is not my... That's okay. I really... It's not important. Okay. To sum up, I think that the rule of immunity is clear. It may have been raised in the 12B1 motion. If it were, it was denied at that time and then properly re-raised at a later time. Political question was raised in the summary judgment motion. I'm not talking about political question. I'm not interested in political question. I believe that that argument also deserves some serious attention, though. Although I think the most direct route to affirmance is to simply go, along with a district court's analysis, which I think is very clear and very consistent with case law, interpreting a very plain immunity provision and alternatively finding the evidence simply doesn't back up the notion that there was knowledge. I might close by saying that the principal argument that the utility had knowledge of the bulldozer accident is that there were two or three employees of a gas company who worked on the base and had interaction with gas company employees. That does not establish knowledge by any means. It's purely speculative. And with that, I think my time has run. Unless there are any further questions, I'd be happy to answer them. Okay. Thank you, Mr. Connolly. Thank you. Mr. Gould. Thank you. Just three brief points in rebuttal, and I'm going to do them in reverse order of importance. They're all important, but this is the least important. It's number one. First is Salazar. I would encourage the court also to read Salazar. That's a case about a water heater, and a water heater that was improperly elevated. So the facts are very different from the gas pipelines at issue here. Second, we've specifically alleged a series of conditions, and it's not just the PVC and PE pipes. One of the conditions is unmarked and unburied pipelines, which is what happened here. They hit an unburied pipeline. They're certainly correct that it wouldn't have mattered if it was a PE pipe, but the fact that it was unmarked and unburied and that was one amongst the dangerous conditions. My third point, and this is, I think, the most important, is the hypothetical that you brought up about the multifamily housing. As my colleague conceded, and as I think he must, is that under SDG&E's view of it, under that hypothetical, Rule 26 would preempt liability. That is a very broad blanket of immunity and one that we do not think that the Rule 26 clearly or explicitly encompasses. We've cited Tesoro I and Tesoro II, which I recognize are district court cases. There just aren't that many cases that interpret COVALT, but that talk about how you have to look very carefully at the language. But if you're going to interpret Rule 26 that broadly, I mean, that's a very expansive view of immunity and one that we don't think is merited by the COVALT analysis, and that's one of the alternative reasons why we said if you have any doubts about this, with respect, it should be a question for the California Supreme Court just because of how broad of immunity that is, and this is an issue of first impression. If the court has no further questions, we ask that you affirm in part or in reverse in part. Thank you. Thank you, counsel. Thank you both for your arguments this morning. They were very helpful. And this case is taken under submission.
judges: PAEZ, BADE, Cardone